**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| American Family Insurance Group, | ) | No. CV09-0360 PHX DGC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Milo Bergeson, as Father, Guardian, and | ) | |
| best Friend of Christopher Bo Bergeson | ) | |
| and Amy Lyn Bergeson, the minor | ) | |
| children of Lynn Renee Bergeson, | ) | |
| deceased, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff American Family Insurance Group has filed a motion for summary judgment. Doc. 88. The motion is fully briefed. Doc. 95, 105. Defendants/Counterclaimants Milo Bergeson, as Father, Guardian, and Best Friend, of Christopher Bo Bergeson and Amy Lyn Bergeson, the minor children of Lynn Renee Bergeson, deceased ("the Bergesons") and David K. Levengood and Joan Levengood, both as husband and wife and as Trustees of the Levengood Family Living Trust ("the Levengoods"), have filed a cross-motion for partial summary judgment. Doc. 95. The motion is fully briefed.[1] Doc. 105, 111.

American Family filed a motion to strike Defendants/Counterclaimants' cross-motion for partial summary judgment (Doc. 98) which Defendants/Counterclaimants oppose

---

[1] American Family's request for oral argument is denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

(Doc. 100).   American Family also filed a motion to preclude testimony on evidence concerning non-testifying expert Rick Sturm.  Doc. 93.  Defendants/Counterclaimants oppose the motion.   Doc. 102.   They have also filed a cross-motion for sanctions and other punishments against American Family.  Doc. 102.  Both motions are fully briefed.  Doc. 102, 108, 110.

For reasons that follow, the Court will grant American Family's motion for summary judgment (Doc. 88), deny Defendants/Counterclaimants' cross-motion for partial summary judgment (Doc. 95), deny American Family's motion to strike testimony as moot (Doc. 93), deny American Family's motion to strike Defendants/Counterclaimants' cross-motion as moot (Doc. 98), and deny Defendant/Counterclaimants' motion for sanctions (Doc. 102).

**I.    Background.**

The Frontier Condominiums Homeowners Association ("the HOA") purchased a general public liability business owners insurance policy ("the policy") from American Family which was effective from March 1, 2007 through March 1, 2008.  Doc. 38 at 7.  The policy includes the following material provisions:

> [American Family] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", . . . to which this insurance applies. [American Family] will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> Each individual unit-owner of the insured condominium [is an insured], but only for liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit-owner's exclusive use or occupancy.

Doc. 89-3 at 18, 20.

On June 26, 2007, Lynn Renee Bergeson died as the result of high carbon monoxide levels within a condominium unit in Frontier Condominiums that she rented from the Levengoods.  The carbon monoxide levels were caused by an improperly installed ceiling fan, which caused a fire in the ceiling.  The fan had been installed by Ms. Bergeson with the help of a friend.  The Levengoods had consented to Ms. Bergeson's installation of the fan.

Milo Bergeson brought an action ("the Bergeson action") against the Levengoods to recover damages from the alleged wrongful death of Ms. Bergeson.  Doc. 35 at 2-3; Doc. 89-

1   at 2-10 (copy of the complaint in the Bergeson action).  The Levengoods tendered the

2   action to American Family for defense and indemnity pursuant to the policy, but American

3   Family denied coverage on the ground that the Levengoods are not insured for the allegations

4   in the Bergeson action.  Doc. 35 at 3.  American Family also refused to settle with the

5   Bergesons for $1,000,000.  *Id.*

6          On February 4, 2009, the Levengoods and Bergesons stipulated that judgment in the

7   Bergeson action would be entered on behalf of the Bergesons in the amount of $4,000,000.

8   *Id.* at 3.  The parties also stipulated that the Bergesons would not execute on the judgment,

9   but that the Levengoods would assign to the Bergesons their claim against American Family

10   for failure to defend.  *Id.* at 3-4.

11          Upon learning that the Levengoods assigned to the Bergesons their claim against

12   American Family, American Family filed the present action in which it seeks a declaratory

13   judgment that it has no duty to defend or indemnify the Levengoods in the Bergeson action

14   and that the Bergesons are not entitled to recover under the policy for any judgment it may

15   obtain in the Bergeson action.  *Id.* at 5.  In the alternative, American Family seeks a

16   declaration that the stipulated judgment is not enforceable in excess of American Family's

17   policy limit of $1,000,000 because no reasonably prudent insurer would have paid

18   $1,000,000 to settle the Bergeson action.

19          The Bergesons and Levengoods have filed a counterclaim against American Family,

20   alleging that American Family, by refusing to settle the case or attempt resolution, violated

21   the duty of good faith and fair dealing implied in the policy and also breached its contract

22   with the Levengoods.  Doc. 38 at 8.

23   **II.     Legal Standard.**

24          A court must grant summary judgment if the pleadings and supporting documents,

25   viewed in the light most favorable to the nonmoving party, "show that there is no genuine

26   issue as to any material fact and that the moving party is entitled to judgment as a matter of

27   law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);

28   *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law

1   determines which facts are material, and "[o]nly disputes over facts that might affect the

2   outcome of the suit under the governing law will properly preclude the entry of summary

3   judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger*, 24 F.3d

4   at 1130.  In addition, the dispute must be genuine, that is, the evidence must be "such that a

5   reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

6   District courts in the Ninth Circuit must consider even inadmissible evidence at the summary

7   judgment stage unless a party has moved to strike the evidence or has otherwise objected to

8   it.  *See Pfingston v. Ronan Eng'g Co.* 284 F.3d 999, 1003 (9th Cir. 2002); *Scharf v. U.S.*

9   *Attorney Gen.*, 597 F.2d 1240, 1243 (9th Cir.1979)).

10  **III.    The Summary Judgment Motions.**

11          **A.    American Family's Motion for Summary Judgment.**

12                  **1.    American Family's Claims.**

13          American Family argues that, as a matter of law, it has no duty to defend or indemnify

14  the Levengoods because they are not insureds under the policy.  Generally, the interpretation

15  of an insurance contract is a question of law for the Court.  *Sparks v. Republic Nat. Life Ins.*

16  *Co.*, 647 P.2d 1127, 1132 (Ariz. 1982).  When interpreting an insurance contract, courts look

17  to the plain meaning of the insurance policy.  *Lennar Corp. Auto-Owner Ins. Co.*, 151 P.3d

18  538, 546 (Ariz. App. 2007).  The Court must enforce the contract as written, and the

19  insurance company will be required to pay damages only on risks intended to be assumed.

20  *Nat'l Union Fire Ins. Co. v. Rick*, 654 P.2d 56, 62 (Ariz. App. 1982).  "It is not the

21  prerogative of the court to create ambiguities where none exist or to rewrite the contract in

22  an attempt to avoid harsh results."  *Id.*  It is the insured's burden to establish coverage under

23  an insuring clause.  *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. App.

24  2000).

25          According to the plain language of the policy, any individual unit-owner of a

26  condominium within Frontier Condominiums can be an insured, but "only for liability arising

27  out of the ownership, maintenance or repair of that portion of the premises which is not

28  reserved for that unit-owner's exclusive use or occupancy."  Doc. 89-3 at 20.  In other words,

unit-owners like the Levengoods are insured only for liability that arises out of their ownership, maintenance, or repair of the common areas of the building. According to the HOA Declaration, which contains the rules governing the Frontier Condominiums, the common areas do not include "any . . . fans . . . which are in the Unit or portions thereof that serve that Unit only[.]" Doc. 89-6 at 27. Common elements do include "roofs, foundations, columns, girders, studding, joists, beams, supports, main walls . . . , bearing walls, floors, ceilings, windows, doors outside of Units, and all other structural parts of the buildings[.]" Doc. 96-1 at 13.

The question the Court must decide is whether the Levengoods' liability in the Bergeson action arose out of their ownership, maintenance, or repair of a common area of the building. To make such a determination, the Court must look to the Levengoods' liability for which it sought coverage from American Family. This liability is found in the allegations of liability as set out in the Bergeson action.

The Bergesons alleged that the Levengoods were liable to them because of the following actions or omissions: "the Defendants Levengood knew or should have known of the recorded Declarations requiring [HOA] notification of any modifications or alterations to the common area of Unit 31," "although the Defendants Levengood granted permission to the decedent for the installation of the ceiling fan, the Defendants Levengood never ascertained that the appropriate permits [from the Town of Payson or the HOA] had been obtained or that the fan installation had been inspected by the appropriate authorities," "the conduct of the Defendants Levengood in failing to ascertain that the ceiling fan was installed correctly and legally, constituted negligence," and "the Defendants Levengood knew, or should have known, that the decedent, Lynn Bergeson was not capable of installing the ceiling fan on her own and the Defendants Levengood had a responsibility to ensure that the ceiling fan was installed correctly and legally." Doc. 89-1 at 8. In other words, according to the complaint, the Levengoods were negligent for four reasons: (1) they failed to notify the HOA before the fan was installed by Ms. Bergeson, (2) they failed to get permits from the Town of Payson before the fan was installed, (3) they never ensured that the fan was

1    installed properly, and (4) they let Ms. Bergeson install the fan even though they knew or
2    should have known that she could not do it properly.

3         The Court finds, based on the allegations in the Bergeson complaint, that the
4    Levengoods' liability did not arise out of their maintenance, ownership, or repair of a
5    common area, but rather arose out of an item within their sole control – the ceiling fan.  The
6    Court will consider each of the four negligent acts or omissions giving rise to liability in turn.

7         First, the Bergeson complaint alleges that the Levengoods' liability arose from the fact
8    that they failed to notify the HOA before the fan was installed.  Such liability is not covered
9    by the policy because it cannot be said to have arisen out of the Levengoods' ownership of
10   a common area.  The cause of the fire was the faulty installation of the fan and its wiring,
11   items that clearly were not common areas.  *See* Doc. 89-6 at 27 (HOA Declaration stating
12   that the common areas do not include "any . . . fans . . . which are in the Unit or portions
13   thereof that serve that Unit only").  The Levengood's alleged failure to notify the HOA that
14   the fan and wiring were being installed is not a failure arising out of their ownership,
15   maintenance, or repair of a common area as required by the policy.  Doc. 89-3 at 18, 20.
16   Although the ceiling is identified by the Declarations as a common area, installation of the
17   fan and wiring cannot reasonable be said to constitute ownership of the ceiling, maintenance
18   of the ceiling, or repair of the ceiling.  True, some ceiling repair might be necessary after the
19   fan is installed, but the fire was not caused by that repair – it was caused by the faulty
20   installation of the fan and wiring, items that are not common areas.

21        Second, the Bergeson complaint alleges that a portion of the Levengoods' liability
22   arose from the fact that they failed to obtain required permits from the Town of Payson
23   before installing the fan.  Such liability is not covered under the policy because, again, it does
24   not arise out of ownership of a common area.  It arises out of the Levengoods' alleged failure
25   to seek a permit to install the fan and wiring – clearly non-common-area items.

26        Third, the Bergeson complaint alleges that the Levengoods' liability arose from the
27   fact that they never ensured that the fan was installed properly.  This liability likewise does
28   not arise out of the Levengoods' ownership of a common area.  It arises from their failure to

1  prevent faulty installation of the fan, a non-common item.

2      Finally, the Bergeson complaint alleges that the Levengoods' liability arose from the

3  fact that they let Ms. Bergeson install the fan even though they knew she could not do it

4  properly. But this liability cannot be said to have arisen out of the Levengoods' ownership

5  of a common area. It arises from their alleged failure to supervise properly the installation

6  of a non-common-area item.

7      Defendants/Counterclaimants argue that Levengoods' liability arose out of their

8  ownership of the ceiling – a part of the condominium that is in the common area. Doc. 95

9  at 8, 15. They argue that the term "arising out of" should be interpreted broadly to include

10 the Levengoods' liability for (1) "failure to adhere to the Declarations" of the HOA;

11 (2) failure to abide by "the Town of Payson Building Code"; (3) "negligent installation of

12 the ceiling fan"; (4) negligence in failing to install a "junction box in the ceiling"; and

13 (5) ownership of "the highly flammable insulation within the ceiling." Doc. 95 at 8. In

14 support of this argument, they cite Couch on Insurance § 119:28, which states that "the

15 phrase 'arising out of' is generally considered to be sufficiently broad that there need only

16 be 'a' causal connection between the loss and the instrument used, rather than a 'proximate

17 cause' connection." They also cite *Pension Trust Fund for Operating Engineers v. Federal

18 Insurance Co.*, 307 F.3d 944, 951 (9th Cir. 2002), in which the Ninth Circuit stated that

19 "arising out of" is "ordinarily understood to mean 'originating from,' 'having its origin in,'

20 growing out of' or 'flowing from' or in short, 'incident to, or having a connection with.'"

21     While the Court agrees that the Levengoods' liability could broadly be said to have

22 arisen out of their failure to abide by the Declarations, their failure to abide by the Town of

23 Payson Building Code, and their negligent installation of the ceiling fan, all of these alleged

24 failures related to the installation of the fan and wiring, not the ownership, maintenance, or

25 repair of the ceiling. The Court cannot find that the Levengoods' potential liability arose out

26 of their negligence in failing to install a junction box in the ceiling or the highly flammable

27 insulation in the ceiling because this negligence was never alleged in the Bergeson action.

28 *See* Doc. 89-1 at 8. Nowhere in the complaint did Bergeson allege that the Levengoods'

1  liability had any connection to the Levengoods' ownership of the flammable insulation

2  within the ceiling or their failure to install a junction box.

3         Because the Levengoods' liability did not arise out of their ownership, maintenance,

4  or control of a common area, the Court finds that they were not insureds under the policy.

5  As a result, the Court must grant summary judgment in favor of American Family.  American

6  Family has no duty to defend or indemnify the Levengoods in the Bergeson action and the

7  Bergesons are not entitled to recover under the policy for any judgment it may obtain in the

8  Bergeson action.

9                    **2.    Defendants' Counterclaims.**

10        Defendants/Counterclaimants bring two causes of action against American Family:

11  breach of contract and breach of the implied covenant of good faith and fair dealing.

12  Although an implied covenant claim usually sounds in contract, Defendants/

13  Counterclaimants' claim for breach of the implied covenant sounds in tort. *See Lloyd v. State*

14  *Farm Mut. Auto. Ins. Co.*, 943 P.2d 729, 733 (Ariz. App. 1996) ("[T]here is a legal duty

15  implied in an insurance contract that the insurance company must act in good faith in dealing

16  with its insured on a claim, and violation of that duty of good faith is a tort.").

17        American Family argues that it is entitled to summary judgment on both

18  counterclaims.  First, American Family argues that it did not breach the insurance contract

19  because its decision to deny the claim by the Levengoods was correct under the terms of the

20  policy.  The Court agrees.  To prevail on a breach of contract claim, a plaintiff must prove

21  the existence of a contract between the plaintiff and the defendant, a breach of the contract

22  by the defendant, and resulting damage. *See Coleman v. Watts*, 87 F. Supp. 2d 944, 955 (D.

23  Ariz. 1998).  Defendants/Counterclaimants cannot prove any breach by American family

24  because, as discussed above, American Family was correct in denying coverage to the

25  Levengoods.  As a result, American Family is entitled to summary judgment on the breach

26  of contract counterclaim.

27        American Family argues that it is entitled to summary judgment on the counterclaim

28  for the breach of the covenant of good faith and fair dealing.  This breach is a tort in the

insurance context, and arises "when the insurance company intentionally denies, fails to process or pay a claim without a reasonable basis for such action." *Noble v. National Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). The tort covers only conduct "between the insurance company and its insured[.]" *Fobes v. Blue Cross and Blue Shield of Ariz., Inc.*, 861 P.2d 692, 694 (Ariz. App. 1993). American Family argues that it owed the Levengoods no duty of good faith and fair dealing because the Levengoods were not insureds under the policy. Doc. 88 at 12-13. The Court agrees. According to the terms of the policy, individual unit-owners are not insureds except for liability arising out of the ownership, maintenance or repair of common areas. Doc. 89-3 at 20. As explained above, the Levengoods were not insureds for purposes of this case because their liability did not arise out of their ownership, maintenance, or repair of a common area. As a result, American Family cannot be liable to them for the breach of the covenant of good faith and fair dealing.

Finally, American Family argues that summary judgment should be granted in their favor on punitive damages. Doc. 88 at 13. The Court agrees. Because the Court will grant summary judgment to American Family on both counterclaims, there are no causes of action on which any claim for punitive damages could stand.

**B.    Defendants/Counterclaimants' Motion for Summary Judgment.**

Because summary judgment in favor of American Family is appropriate, the Court will deny Defendants/Counterclaimants' cross-motion. Doc. 95. Because the Court will deny the cross-motion, the Court finds that American Family's motion to strike the cross-motion (Doc. 98) moot, and will deny it.

**IV.    Other Motions.**

American Family filed a motion to strike testimony (Doc. 93) which Defendants/Counterclaimants oppose. Defendants/Counterclaimants have also filed a motion for sanctions against American Family (Doc. 102), which American Family opposes.

As to the motion to strike, American Family asks the Court to preclude Defendants/Counterclaimants from offering any direct or rebuttal evidence or testimony about American Family's non-testifying expert, Rick Sturm. American Family argues that Defendants/

1   Counterclaimants took a sworn statement from its expert, Mr. Sturm, without providing
2   notice to it and without seeking approval from the Court.  American Family alleges that this
3   action was in violation of the Federal Rules of Civil Procedure, and asks the Court to
4   exercise its discretionary power and grant it costs and expenses incurred in seeking to enforce
5   the rules.  Doc. 93 at 2.

6          Defendants/Counterclaimants allege that no confidentiality ever attached to Mr. Sturm
7   because he was not retained as an expert in anticipation of litigation.  Doc. 102.  They allege
8   that their actions were proper, and they request sanctions against American Family for filing
9   the motion to strike.

10         Because the Court will grant summary judgment in favor of American Family on all
11  claims, the Court finds that the request to preclude evidence is moot.  The Court will also
12  deny American Family's request for fees and costs.

13         In the motion for sanctions, Defendants/Counterclaimants argue that sanctions are
14  warranted because American Family has engaged in "dilatory and obstructionist discovery
15  tactics."  Doc. 102 at 15.  They argue that they have been prejudiced and "deprived of clearly
16  discoverable evidence bearing on the issue of American Family's bad faith claim handling."
17  *Id.* at 16.  Given that the Court has granted summary judgment to American Family on
18  coverage grounds and has not reached the issue of bad faith, Defendants/Counterclaimants
19  have suffered no prejudice.  The Court will not exercise its inherent power to impose
20  sanctions against American Family.

21         **IT IS ORDERED:**

22         1.     American Family's motion for summary judgment (Doc. 88) is **granted**.

23         2.     Defendants/Counterclaimants' cross-motion for partial summary judgment
24                (Doc. 95) is **denied**.

25         3.     American Family's motion to strike testimony (Doc. 93) is **denied** as moot.

26         4.     American Family's motion to strike Defendants/Counterclaimants' cross-
27                motion (Doc. 98) is **denied** as moot.

28

5.      Defendants/Counterclaimants' motion for sanctions (Doc. 102) is **denied**.

DATED this 13th day of September, 2010.

_____

David G. Campbell
United States District Judge